1          UNITED STATES DISTRICT COURT

2              DISTRICT OF NEVADA

3     THE HONORABLE JAMES C. MAHAN, JUDGE PRESIDING

4

5

6   UNITED STATES OF AMERICA,

7          Plaintiff,

8   vs.                        NO. 2:10-CR-0319-JCM-PAL

9   PARKER ENLOE,                     SENTENCING

10          Defendant.
    _____/

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14             FRIDAY, JANUARY 18, 2013

15                  10:30 A.M.

16

17

18  APPEARANCES:

19  For the Plaintiff:    DANIEL SCHIESS, AUSA

20  For the Defendant:    ROBERT DRASKOVICH, ESQ.

21  For Probation Dept.:  BRIDGER FRANZEN, USPO

22

23

24

25  Reported by:  Joy Garner, CCR 275
                  Official Federal Court Reporter

PDF created with pdfFactory trial version www.pdffactory.com

```
 1          LAS VEGAS, NEVADA, FRIDAY, JANUARY 18, 2013

 2                        10:30 A.M.

 3                        *    *    *

 4                      PROCEEDINGS

 5

 6          THE CLERK:  This is the time set for

 7  the imposition of sentencing of Parker Enloe,

 8  Criminal Case Number 2:10-CR-0319-JCM-PAL, United

 9  States of America versus Parker Enloe.

10               Counsel, please note your

11  appearances for the record.

12          THE COURT:  Mr. Schiess.

13          MR. SCHIESS:  Daniel Schiess for the

14  United States.

15          MR. DRASKOVICH:  Good morning, I'm here

16  on behalf of Mr. Enloe who is present.

17          THE COURT:  All right, is everybody

18  ready to proceed this morning?

19          MR. DRASKOVICH:  Yes.

20          MR. SCHIESS:  Yes, your Honor.

21          THE COURT:  All right, Mr. Draskovich,

22  let me ask you and Mr. Enloe to approach the

23  lectern, please.  Now should this be sealed?

24          MR. SCHIESS:  No, your Honor.

25          THE COURT:  All right.  Any reason why
```

PDF created with pdfFactory trial version www.pdffactory.com

1   sentence should not be imposed at this time?

2          MR. DRASKOVICH:  No.

3          THE COURT:  All right, Mr. Enloe, this

4   is the time set for imposition of sentence upon

5   you in Case Number 10-CR-319.

6               On July 16, 2010, you appeared

7   before the Court and entered a plea of guilty to

8   conspiracy to commit wire fraud, a violation of

9   18 USC, Section 1349, and at that time you also

10  agreed to the forfeiture of the following:

11  $10,000 in United States Currency to the United

12  States of America pursuant to Federal Rule of

13  Criminal Procedure 32.2, Subsection (b)(1) and

14  (b)(2); 18 USC, Section 981, Subsection

15  (a)(1)(c); 28 USC, Section 2461, Subsection (c);

16  18 USC, Section 982, Subsection (a)(2)(A); and 21

17  USC, Section 853.

18               Having reviewed the presentence

19  report and plea agreement, the Court hereby

20  accepts your guilty plea and adjudicates you

21  guilty of the charge.  Now, the defendant filed

22  with the Court and Probation Department

23  objections to the presentence report.  Probation

24  filed an addendum to the presentence report on

25  November 5, 2012.  Before we discuss those

PDF created with pdfFactory trial version www.pdffactory.com

1   written objections, do you have any other

2   objections, Mr. Draskovich?

3           MR. DRASKOVICH:  No.

4           THE COURT:  Mr. Enloe, did you read the

5   presentence report?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Did you discuss it with

8   your attorney?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Did you find any errors or

11  discrepancies other than he may have pointed out

12  to me?

13          THE DEFENDANT:  No.

14          THE COURT:  All right.  Now let's hear

15  your argument on the written objections?

16          MR. DRASKOVICH:  If I could just submit

17  it on the written objections, they were fairly

18  minor and I did file with the Court a sentencing

19  memorandum at the beginning of this week and it

20  hinted on devoting a great deal of time and

21  perhaps the Court's attention to the issues that

22  have just recently arisen.

23          THE COURT:  All right.  Let me just

24  review these.  (Reading.)

25              Frankly, I'm inclined to deny

PDF created with pdfFactory trial version www.pdffactory.com

1   the first objection because the information there

2   was extracted apparently from the charging

3   document, is that correct, Mr. Franzen?

4            PROBATION OFFICER:  Your Honor, this

5   case has gone back and forth and Officer Nagazino

6   (phonetic) now retired had actually did this

7   investigation and then I've since gotten in the

8   investigation and she answered and responded to

9   those objections when she was still actively on

10  duty.  I believe those are all correct and

11  there's no reason for me to think otherwise.

12           THE COURT:  All right, and then the

13  second one, of course, the offense was a

14  conspiracy and, you know, they're liable for

15  everybody else's actions.  The third --

16  (Reading.)  Now, probation says this appears to

17  conflict with the facts contained in the plea

18  agreement.  So I'm inclined to deny that on that

19  basis unless you have anything to add, Mr.

20  Draskovich.

21           MR. DRASKOVICH:  No, I don't.

22           THE COURT:  All right.  The Probation

23  Department calculated -- I'm inclined to deny all

24  of those written objections then for the record,

25  Mr. Franzen.

PDF created with pdfFactory trial version www.pdffactory.com

1          PROBATION OFFICER:  Thank you, your

2    Honor.

3          THE COURT:  Yes, sir.

4               Okay, the Probation Department

5    calculated the base offense level to be seven.

6    Fourteen levels were added because of the loss

7    amount was at least $400,000, but not in excess

8    of $1 million pursuant to Sentencing Guideline

9    Section 2B1.1, Subsection (b)(1)(h), which makes

10   an adjusted offense level of twenty-one.

11               Mr. Schiess?

12         MR. SCHIESS:  Your Honor, while you

13   were denying those, I had a chance to go back and

14   read them again.  I submitted to the Court my

15   objections to the sentencing memorandum, but with

16   respect to the specific facts of a long-term

17   conspiracy here between a number of players that

18   started in '07 to '09, Mr. Enloe joined that

19   conspiracy probably in early '09.  He was only in

20   it for about a three- or four-month period.  So

21   while the conspiracy was larger and --

22         THE COURT:  -- his involvement was

23   smaller.

24         MR. SCHIESS:  Yeah, the PSR is correct

25   and the conspiracy was '07 to '09, his

PDF created with pdfFactory trial version www.pdffactory.com

1    participation, and it was only for about four

2    months which is consistent with his objection

3    number one, and would also be in part consistent

4    with his objection number three, and then there's

5    just some detail of who he actually loaned the

6    money to and who he didn't and minor, but I need

7    the Court to know that in terms of the timing of

8    it.

9           THE COURT:  All right, I understand

10   that.  I mean if you want I can say just add a

11   sentence that although all conspirators are

12   liable for the actions of all other conspirators,

13   his involvement was only from -- when was his

14   actual involvement?

15          MR. SCHIESS:  I would just -- I don't

16   know the beginning date, but it would be for a

17   three- or four-month period or maybe a two-month

18   period in early '09.

19          THE COURT:  Okay, but his involvement

20   was only in -- just add that if you would, Mr.

21   Franzen, although a conspirator is liable for all

22   acts of all other conspirators, Mr. Enloe's

23   actual involvement was only in the months of

24   2009.

25          PROBATION OFFICER:  Your Honor, if I

PDF created with pdfFactory trial version www.pdffactory.com

1   may suggest that we add that into paragraph 8 on

2   page 6 at the beginning where it talks about Mr.

3   Enloe's involvement.

4            THE COURT:  That's fine.

5                 All right, the Probation

6   Department calculated the base offense level to

7   be seven.  Fourteen levels were added because the

8   loss amount, as I said, was at least $400,000 but

9   not in excess of $1 million which makes an

10  adjusted offense level of twenty-one.  A

11  three-level reduction for acceptance of

12  responsibility was applied resulting in a total

13  offense level of eighteen.  The total criminal

14  history points are zero resulting in a criminal

15  history category of Roman numeral I.

16                 The maximum statutory term of

17  imprisonment is thirty years.  The maximum

18  statutory fine is $1 million, and a special

19  assessment of $100 per Count is mandatory.  Based

20  on a total offense level of eighteen and a

21  criminal history category of Roman numeral I, the

22  guideline range is 27 to 33 months with a

23  supervised release term of three to five years

24  and the guideline fine range was $6,000 to $1

25  million.

PDF created with pdfFactory trial version www.pdffactory.com

1                    And then on October 24, 2012,

2    the government filed a sealed motion -- was that

3    under seal?

4           MR. SCHIESS:  Yes, your Honor.  It no

5    longer needs to be under seal.

6           THE COURT:  So it will be unsealed

7    then, a motion seeking a four-level downward

8    departure for defendant having provided

9    substantial assistance to the government in the

10   investigation of other conspirators, or another

11   person I should say, who had committed an

12   offense.  So the government's motion is based on

13   Sentencing Guideline Section 5K1.1.

14                   And the basis for that -- I

15   don't know -- the basis it's in the motion, but

16   applying that downward departure, the total

17   offense level then would be fourteen with a

18   criminal history category of Roman numeral I and

19   a guideline range of fifteen to twenty-one

20   months.  On January 15, 2013, the defendant filed

21   a sentencing memorandum with the court requesting

22   a downward adjustment, if you will, from the

23   guideline range under the factors set forth in 18

24   USC, Section 3553(a), requesting a term of

25   probation.

PDF created with pdfFactory trial version www.pdffactory.com

1            All right, Mr. Schiess, any

2  additional comments before I impose sentence?

3            MR. SCHIESS:  Your Honor, the comments

4  I make are set forth in the sentencing

5  memorandum.  I do want to point out, though, that

6  in terms of the culpability of many of the other

7  players in this case, Mr. Enloe's culpability is

8  less because his involvement was much less.  His

9  role was simply loaning the down payment.  He was

10  in the business of investing money for his group

11  of investors and he was to make a fee off of his

12  investments for them.

13            His role in this particular

14  conspiracy was limited to four properties.  Those

15  four properties, though, went into foreclosure.

16  They were each fraud.  Lenders suffered between

17  $400,000 and $1 million, closer to $1 million of

18  loss given the actions of the other people, and

19  so while his culpability is less than others as

20  to these four transactions, they were his actions

21  and an integral part.

22            We have, in negotiating a plea

23  agreement, we recommended to the Court that

24  the -- and negotiated a plea in which we

25  recommended to the Court that there was a

PDF created with pdfFactory trial version www.pdffactory.com

1   sentencing range based on the loss calculation

2   would be between $400,000 and $1 million for a

3   loss calculation, and that reflects the loss

4   range for properties, but he was also involved in

5   another scheme that involved more money which

6   would have taken it up to the next bracket of

7   loss, but we didn't count that.

8                   Now, with respect to the

9   objections that Mr. Enloe is making for the

10  cooperation and to point out his cooperation, our

11  recommendation for four levels is a fair

12  recommendation because he did not testify,

13  although that was our choice.  He came down

14  prepared to testify and met with us and he met

15  with other law enforcement agencies.  So I feel

16  like we have given him the benefit of the next

17  level up for having testified by pointing him out

18  to the four levels.

19                  The final issue that he's

20  objecting to and wants to address to the Court is

21  the matter of his children.  I understand from

22  talking with Mr. Draskovich and then with Mr.

23  Enloe's civil attorney, Mr. Michael Van, that

24  there are extenuating circumstances.  What I

25  would like to do is to hear their position to the

PDF created with pdfFactory trial version www.pdffactory.com

1    Court on that.

2              I'd point out to the Court that

3    at this point in time their motions I don't

4    believe provide substantial information which

5    they certainly have the opportunity to supplement

6    it here.  Based upon that, those would be our

7    recommendations to stay within the range unless

8    there's an extenuating circumstance the Court

9    finds --

10         THE COURT:  All right, and after we've

11   heard that, I'll give you a chance to respond

12   finally.

13         MR. SCHIESS:  With respect to the

14   restitution, I can save that argument for later.

15   There's some points I need to raise to the Court.

16   I'm going to ask the Court to defer ruling on

17   that until I have the time to continue to collect

18   more information.  The four lenders which we

19   identified as being the victim lenders are

20   Freddie Mac and Fannie Mae.  We have been, shall

21   we say, working with a lot of effort to get

22   information from Fannie Mae, and they've been

23   cooperative.

24         THE COURT:  Lots of luck.

25         MR. SCHIESS:  Well, they've been very

PDF created with pdfFactory trial version www.pdffactory.com

1  cooperative and they've been helpful, but the

2  information they give me, you almost need to

3  understand Latin or Greek to be able to follow

4  the maze, and they've been trying to straighten

5  it out.  So I need to go back and subpoena more

6  information from other entities to be able to

7  make it very accurate of what we should do.

8          THE COURT:  All right, okay, and I do

9  want it to be accurate.

10          MR. SCHIESS:  But we're prepared on

11  restitution to go forward on one property, but I

12  would like the opportunity to address the --

13          THE COURT:  And it should be complete,

14  you should have all the properties.

15          MR. SCHIESS:  So if we can set some

16  sort of hearing for sometime later while I

17  continue to drag more information out of the dark

18  caves.

19          MR. DRASKOVICH:  And we have no

20  objection to that.

21          THE COURT:  All right then.

22              Mr. Enloe, would you like to

23  address the Court, would you like to have Mr.

24  Draskovich speak on your behalf?  Or both of you

25  may speak, it's your option.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE DEFENDANT:  I would just -- I'm

2    very sorry for what I did.  It's one of the

3    things I regret and I hate to see anyone lose

4    money.  It's happened to me before when I've been

5    defrauded and so I apologize and I want to make

6    things as right as possible, but I do have four

7    wonderful kids at home and they live with our

8    personal situations right now.  They need me more

9    than ever in their lives.

10          MR. DRASKOVICH:  There were a number of

11   issues that Mr. Schiess had addressed and we take

12   no issue with the four points.  As the Court is

13   well aware, generally that committee comes out

14   with one point, two points, and in this case we

15   have four, so we have no objection whatsoever to

16   the request for four, and I think that's

17   appropriate under the circumstances.

18              What I wanted to address in my

19   argument is primarily our request for the Court

20   to depart downwards four points, and our basis

21   for this request comes under 5H1.6 of the

22   sentencing guidelines, and I would submit to the

23   Court that under the circumstances of this case,

24   we do have the irreplaceable caretaker which has

25   just come about in the last few months.

PDF created with pdfFactory trial version www.pdffactory.com

1                    Mr. Parker (sic) has four
2    children:  Camden, who is 9; Owen, who is 7;
3    Leif, who is 5; and Ayla, who is 2.  Four months
4    ago, their mother left them.  She came to a point
5    in her life in which her life-style changed.  The
6    life-style that she has chosen and will continue
7    to choose it appears is unsuitable for the
8    raising of children.  They live in Utah and in
9    Utah the Division of Family Services have found
10   her to be unfit to be a mother and now Parker
11   Enloe is the sole provider and sole parent of
12   these three boys and this little girl.
13                    The cases we had cited in our
14   brief, the Leon case and the Menyweather case,
15   dealt with basically these departures for family
16   responsibilities and where the defendant was the
17   only person that could provide for the care of a
18   loved one whether it be an elderly spouse or a
19   child.  Both the Leon case and the Menyweather
20   case dealt with adults.  The Leon case dealt with
21   an adult who had emotional needs.  The
22   Menyweather case dealt with an adult, a spouse,
23   who was dealing with cancer.
24                    In this case, I would submit --
25   and in the Leon case there was a six point

PDF created with pdfFactory trial version www.pdffactory.com

 1   downward departure.  In the Menyweather case

 2   there was an eight point departure.  In this case

 3   we're asking for four points, a lesser departure,

 4   however, I would submit to the Court that the

 5   needs of the family members in this case are

 6   greater than those in the Leon case and the

 7   Menyweather case.

 8                    This Court is well aware that

 9   the formative years are from basically one to

10   sixteen.  Here we have a two-year-old, a

11   five-year-old, a seven-year-old, and a

12   nine-year-old who have lost their mother.  The

13   Department of Justice keeps statistics on death

14   row inmates and they found that the vast majority

15   of those sitting on death row suffered

16   abandonment from both mom and dad.

17                    These little children only had

18   one mother and only had one father, and I would

19   submit to the Court that the fact that the mother

20   has abandoned them has made their father even

21   more irreplaceable.  They only have one parent.

22            THE COURT:  What about the

23   grandparents?

24            MR. DRASKOVICH:  The grandparents are

25   in their late 60's.  They live -- they don't live

PDF created with pdfFactory trial version www.pdffactory.com

1  in Alpine, Utah.  Both grandma and grandpa work

2  full-time.  Grandma is a teacher, Grandpa works

3  as a physical therapist in the school district,

4  and to be quite honest they really don't want to

5  take care of these kids.  They've raised kids,

6  they've moved on.  I can appreciate the Court's

7  concern and the government's concern regarding,

8  well, who else can take care of these kids.

9              Mr. Parker works full-time and

10  he has a live-in nanny who cares for the children

11  approximately eight or nine hours a day Monday

12  through Friday.  His family is not even caring

13  for his kids right now.  In the event that he

14  were to be incarcerated, the kids very likely

15  would either go into foster care or be divided

16  and having lost a mother, these kids ranging from

17  two to nine really bonded with each other because

18  they're striving to find some sense of solidity

19  and continuance in their lives.

20              Mr. Van, who is at the table,

21  worked out this separation and ultimate divorce

22  between Mr. Parker's soon-to-be ex-wife and Mr.

23  Parker.  He has personal knowledge of the

24  children, their extended relatives, uncles,

25  aunts, and grandparents, and he is here today and

PDF created with pdfFactory trial version www.pdffactory.com

```
1   he is in the gallery if the Court could allow me
2   to call him.
3              THE COURT:  Sure, come forward, Mr.
4   Van.
5              MR. DRASKOVICH:  And now Mr. Schiess
6   said these two gentlemen have known each other
7   for a long time and Mr. Schiess now is going to
8   have an opportunity to cross-examine --
9              THE COURT:  You don't need to take the
10  stand.  I know Mr. Van.  Mr. Van is a licensed
11  attorney here in Nevada and probably in Utah as
12  well.
13             MR. VAN:  Yes, your Honor.
14             THE COURT:  And I was an attorney for
15  25 or 30 years, Mr. Van.  So I'll take it --
16  you're an officer of the court and I'll take your
17  statement.
18             MR. VAN:  Your Honor, I was retained by
19  Mr. Enloe with regard to the divorce, and I will
20  as briefly as I can, about three months ago a
21  situation came up where Parker's wife, Aria, was
22  addressed by state agencies as a result of an
23  inappropriate relationship she was having with a
24  seventeen-year-old girl.  The Department of
25  Family Services have made it clear that she is
```

PDF created with pdfFactory trial version www.pdffactory.com

1   not a viable option.  The only reason that they

2   are not prosecuting that case right now is the

3   parents of that seventeen-year-old have younger

4   children as well as Mr. Enloe's children, and

5   they are concerned about the ramifications in the

6   community.

7               More importantly -- well,

8   additionally, that seventeen-year-old just turned

9   eighteen and has moved in with Aria as a

10  companion.  It's a messy situation.  She, Aria,

11  has no desire to have the children.  I, in

12  fact -- before the divorce I sat down and said to

13  her, you understand -- she took $2,000 and moved

14  out -- and I said, you understand you need to get

15  separate counsel.  I don't want separate counsel.

16  You understand that you could get more money and

17  you could get visitation.  I don't want it.  I

18  don't want anything to do with this.

19              One of the struggles that we're

20  having now is that, for example, last weekend

21  Parker called me up and said, I don't know what

22  to do.  This was her weekend for some time --

23  Saturday she was going to spend with the kids, I

24  was going to leave the house so that she could

25  stay in the house because she doesn't have

PDF created with pdfFactory trial version www.pdffactory.com

1  anywhere to take them, and she showed up and

2  said, I'd rather go to a party with my friends.

3              The implications that they have

4  on their children right now is they've got the

5  children to feel like mom just doesn't care.  Mr.

6  Enloe has some siblings.  One lives in Colorado,

7  a full-time worker, he works at a hotel situation

8  so he's a 24/7 guy.  He has a sister that lives

9  in Colorado who married a Czech National who is

10  moving back to Czechoslovakia.

11              He has a sister who lives here

12  that just had a baby and really doesn't have any

13  interest in having four kids, and then he has a

14  brother and the brother and his wife both are --

15  it's a two-income home in order to support their

16  four children and addressing that with them is,

17  can we get any assistance from the state, what

18  can we do?  And I said, no, that's not available.

19              And so the only real viable

20  option is either to allow him to raise his

21  children or they're going to have to go to foster

22  care or be separated.  The nanny issue is

23  actually kind of an interesting issue because

24  it's an extra bedroom, will you watch my kids,

25  and you can eat all my food that you want

PDF created with pdfFactory trial version www.pdffactory.com

1   situation.  And when she has called sick and

2   said, I've got to -- I can't take care of your

3   kids today, I've got to go do something else, he

4   has to leave work and take days off and do that.

5              He is the only one that really

6   has taken care of these children, and I know that

7   the oldest boy, nine-years-old, is involved in

8   sports, and Parker is very, very supportive of

9   his children.  He goes to every event.  He's a

10  minivan dad and I've teased him about it.  It's

11  very critical that he be allowed the opportunity,

12  there's just no other option.

13             And I appreciate that the

14  Court -- I have the greatest regard for the Court

15  and respect it and this is an instance where I

16  would just implore the Court for leniency to

17  allow him even a house arrest issue.  The house

18  to be home in order to go to work and back,

19  whatever, but I just -- I can't think of another

20  option that's available.

21             THE COURT:  Are the children with him

22  now?  I mean here or in Alpine --

23             MR. DRASKOVICH:  Alpine, Utah.

24             MR. VAN:  The company relocated in

25  about 2007 from Las Vegas, and so there was just

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   some transactions here that were winding up, but
 2   they live in Alpine, Utah, yes, sir.
 3            THE COURT:  Where is Alpine?  I'm not
 4   familiar with Alpine.
 5            MR. VAN:  Alpine is north of Provo,
 6   south of Salt Lake.
 7            THE COURT:  Okay.
 8            MR. VAN:  It's kind of at the point of
 9   the mountain just south of the point of the
10   mountain not too far.  If you draw the
11   schematics, it's across the street and into the
12   mountains from that Thanksgiving point.  Well,
13   here let me make this reference because it's the
14   easiest one for me.  It's behind Cabela's is my
15   reference.
16            THE COURT:  All right, and understand
17   because I hear this -- and Mr. Draskovich and Mr.
18   Schiess can attest to it -- all the time, you
19   know, oh, don't send me to prison, I've got to
20   take care of my kids, I've got to take care of my
21   sick mother.  I mean we hear this all the time,
22   you know, so it's a common request.
23            MR. VAN:  Well, I understand, your
24   Honor.  If you have any questions about this
25   situation, I'm more than happy to answer any one
```

PDF created with pdfFactory trial version www.pdffactory.com

1   you've got.

2           THE COURT:  Mr. Schiess, do you have

3   any questions you want to propound?  I know he's

4   not under oath, but as one attorney to another.

5           MR. VAN:  I think that he would prefer

6   that I get up there and have an open season,

7   but --

8           MR. SCHIESS:  Well, since I've known

9   Mr. Van for about twenty years, I would relish

10  the opportunity, but there's nothing relevant to

11  this proceeding, and I have a lot of respect when

12  I say that.  I do have just an observation to

13  make about that to follow-up and kind of

14  interject with a counter argument if I may.

15                  You know, while everybody has a

16  unique situation and the Court certainly has to

17  take individual situations and facts into

18  account, the Court still has to look at a

19  parenting situation and there have been -- I'm

20  thinking of a specific instance several months

21  ago in front of Judge Dawson where a similar

22  situation arose where there was a mid-30's

23  African female single mom with a kid who was

24  teen-aged and a kid in a single digit age, had no

25  parent.

PDF created with pdfFactory trial version www.pdffactory.com

1                          And she was still in a mortgage

2    fraud case with a sentence of 24 months and not

3    knowing where the kid was going to have to go,

4    her parents lived in Costa Rica and the judge

5    said, you're going to have to deal with that

6    issue.

7                          But, you know, I understand that

8    you need to take into account individual factors,

9    and there are four kids here and they're little

10   kids who are presently being traumatized by a

11   situation not of Mr. Enloe's doings, although the

12   crime and the consequence are Mr. Enloe's doing,

13   so I defer to you.

14            THE COURT:  All right.

15            MR. SCHIESS:  And if you are going to

16   lower the sentence, if you're contemplating that,

17   if you were to lower it three points, you would

18   take it to the top of Zone B which would give you

19   the option of sentencing him to home confinement

20   for eight to fourteen months and then other

21   conditions that probation can explain.

22            THE COURT:  All right.

23            MR. SCHIESS:  But I don't think you

24   need to go down four levels.

25            MR. VAN:  Your Honor, do you have

PDF created with pdfFactory trial version www.pdffactory.com

1  anything else of me?

2         THE COURT:  No, I don't.  Thank you,

3  Mr. Van.  Thank you for your time.

4         MR. VAN:  All right, thank you.

5         MR. DRASKOVICH:  Just briefly, and I

6  can appreciate Mr. Schiess's comments.  There is,

7  however, a fundamental difference between a

8  single parent, i.e., a parent who has a child and

9  raises that child alone versus children who have

10 two parents and then are ultimately abandoned by

11 one.  I mean both of them are very tragic

12 situations, however, I would submit to the Court

13 that the latter, their actually being abandoned

14 by mom, is worse.

15            I'd also submit to the Court

16 that it's fairly extraordinary to have four

17 children from nine under.  I mean it's -- I don't

18 know very many people that have four kids under

19 the age of ten.  I don't know of a single

20 situation.  I've never heard of a single

21 situation where a mother of four children, two to

22 nine, leaves, just up and leaves and doesn't want

23 to see them anymore.  So I would urge the Court

24 to take that into consideration in determining

25 whether or not this is an extraordinary

PDF created with pdfFactory trial version www.pdffactory.com

1  situation.

2            Additionally, and I can

3  appreciate that downward departures generally in

4  all situations where the defendant is an

5  irreplaceable caretaker of children and the

6  extent of the departure appropriately serves to

7  protect those family members from the impact of

8  the defendant's prolonged incarceration, in this

9  case fifteen months is an eternity to a

10 two-year-old or to a five-year-old or to a

11 seven-year-old.

12            I remember the times back when

13 summer break of three months was a lifetime in

14 and of itself.  Based upon the very tender age of

15 these children, and there are special

16 circumstances in this case, I would urge the

17 Court to take three points and sentence him to

18 home confinement and whatever other conditions

19 that the Court sees fit.  With that, I'll submit

20 it.

21          THE COURT:  All right, and do you want

22 to add anything, Mr. Franzen?  I'll give you a

23 chance.

24          PROBATION OFFICER:  I think I should,

25 your Honor, for clarification sake.  This is a

PDF created with pdfFactory trial version www.pdffactory.com

1   case that the guidelines that apply to this case

2   are the 2009 guidelines, and at that time it

3   would be a four level additional departure down

4   to reach the top of Zone B, however, because of

5   the Count of conviction, probation is excluded

6   from -- by statute probation cannot be imposed.

7   However, the Court can impose a sentence of one

8   month custody with a term of supervised release

9   to follow as long as one month is fulfilled by

10  imprisonment according to the guidelines in Zone

11  B.

12          MR. DRASKOVICH:  The plot thickens.  If

13  the Court were to do that, I think it would be

14  much easier and it would be much more suitable.

15  Perhaps they could deal with it for a month and

16  split the kids up for just a month while he

17  served a period of incarceration for a month

18  versus fifteen.

19          THE COURT:  All right, okay.  That's

20  why I get the big bucks.  All right, anything

21  else from anybody?

22              Okay.  And, Mr. Enloe, did you

23  want to add anything?  I'll give you a chance if

24  you want to add anything.

25          THE DEFENDANT:  I just, you know, I

PDF created with pdfFactory trial version www.pdffactory.com

1  want to make it right as much as I can, and it

2  would be much easier to do so if I'm not

3  incarcerated.

4          THE COURT:  All right.

5              All right, having heard

6  statements of counsel for the government and

7  counsel for the defendant and having heard from

8  Mr. Van, as I noted a licensed attorney in Nevada

9  and I think in Utah as well, is that correct,

10 Mike?

11         MR. VAN:  That's correct, your Honor.

12         THE COURT:  And from a personal note,

13 I've litigated against Mr. Van I'm sure on many

14 occasions, so I know Mr. Van well.  Having heard

15 the defendant's remarks and Mr. Van's remark,

16 having read the presentence report submitted by

17 Probation Department, considering its contents

18 and the contents of the plea agreement, the Court

19 hereby accepts the terms of the plea agreement

20 and will embody those terms in the sentence

21 provided.  Of course, overriding everything are

22 the factors set forth in 18 USC, Section 3553(a).

23              As I said, this is a fairly

24 common request, but there are a number of factors

25 here that I think maybe take it out of the

PDF created with pdfFactory trial version www.pdffactory.com

1   mainstream, if you will, of the request.  One is

2   the age of the children.  You say fifteen months

3   is a lifetime to a child, and if you look at the

4   age if you're two-years-old, twenty-four-months

5   old, it's like, you know, that's two-thirds of

6   your life.  So it's like if you're somebody who's

7   sixty-years-old, then it's forty years.

8                  And depending on the child's

9   perception or point of view, fifteen months is a

10  lot longer to a child than it is to one of us

11  because it's a much larger -- just like for a

12  child a month is a long time, you know, if you're

13  fifty-years-old, it's, you know, one thirty-sixth

14  of your life.  And if you're, you know,

15  sixty-years-old, a month is -- I can't give you

16  arithmetic, but it's infinitesimal, you know, so

17  the time is just much different to a child and

18  it's important to have a parent there.

19                  The other thing is that your

20  involvement was somewhat peripheral.  You

21  committed a crime and you're going to have to pay

22  the penalty for that, but I'm leery or concerned,

23  too, about your children paying.  They're going

24  to pay a price for having a felon as a father,

25  and I'm concerned about adding to that.  It's a

PDF created with pdfFactory trial version www.pdffactory.com

1    unique situation with your wife, an unfortunate

2    situation.

3                    So you moved for a downward

4    departure for substantial assistance, is that

5    correct, so I have to go down to what level now

6    to give him one month incarceration?

7                    PROBATION OFFICER:  Your Honor, it

8    would take it down to level ten which would be

9    Zone B in the 2009 guideline range.

10                   THE COURT:  All right, so I'll depart

11   down to level ten, one month, and what would be

12   the supervised release then?  Three years?

13                   PROBATION OFFICER:  We would still

14   recommend five years, your Honor, with the

15   conditions we impose as well as a condition

16   that --

17                   THE COURT:  -- location monitoring?

18                   PROBATION OFFICER:  Location monitoring

19   for the remainder of the six months which would

20   be a five-months' term of home detention.

21                   THE COURT:  All right.  Do you

22   understand that, Mr. Enloe?

23                   THE DEFENDANT:  I don't know.

24                   THE COURT:  And Mr. Draskovich can

25   explain it to you.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE DEFENDANT:  I don't have the full
2  understanding of home detention.  I mean what for
3  work?
4          MR. DRASKOVICH:  You can work and go to
5  the grocery store.
6          THE COURT:  Do you understand?
7          THE DEFENDANT:  Yes.
8          THE COURT:  All right.
9              So you are hereby committed to
10  the Bureau of Prisons for a term of one month to
11  be followed by five years of supervised release,
12  and the five years would include five months of
13  home confinement with electronic monitoring.  So
14  that sentence is within the guideline range
15  determined by the Court and the Court finds no
16  reason to depart.
17              A mandatory penalty assessment
18  of $100 is required by statute and due
19  immediately.  Restitution, how long do you need
20  to defer restitution?
21          MR. SCHIESS:  Your Honor, I need to
22  issue a couple more subpoenas so I would imagine
23  if we could do it for forty-five days.
24          THE COURT:  All right, and then we
25  can't enter the judgment then until we get the

PDF created with pdfFactory trial version www.pdffactory.com

1  restitution, is that right, David?  Or can we do

2  an amended judgment?

3        THE CLERK:  We can do an amended

4  judgment and leave out the restitution.

5        THE COURT:  And just say restitution to

6  be determined at a later date.

7        MR. SCHIESS:  Yes, and then I also have

8  the order of forfeiture to address before the

9  Court completes.

10        THE COURT:  Oh, yeah, I though I saw

11  that.  I'll get to that in just a minute.

12              So the restitution will be

13  determined at a later date and that will be --

14  when will that be, David?

15        THE CLERK:  How many days out?

16        THE COURT:  Forty-five he said, and if

17  you need more, let me know and we can reset this.

18        THE CLERK:  Friday, March 1st at 10:00.

19        THE COURT:  Friday, March 1st at 10:00.

20        MR. SCHIESS:  Your Honor, I will be out

21  of the district on March 1st, could we do it the

22  following week?

23        THE COURT:  Sure, and I've got to be at

24  the Ninth Circuit, is that when I go to the Ninth

25  Circuit?

PDF created with pdfFactory trial version www.pdffactory.com

1           THE CLERK:  You'll be gone, your Honor,

2    March 5th and March 6th which is Tuesday and

3    Wednesday.

4           THE COURT:  But then I'm out the rest

5    of the week, too.  It's the Ninth Circuit so

6    let's do it in two weeks then.  We'll just make

7    it sixty days.

8           THE CLERK:  Friday, March 15th at

9    10:00.

10          THE COURT:  Friday, March 15, at 10:00

11   a.m. for the restitution which will be jointly

12   and severally with related case numbers 10-CR-300

13   and 10-304.

14          MR. SCHIESS:  Before we do that, may I

15   with respect to the related cases, what I'd like

16   to do is submit to the Court the cases of the

17   co-defendants on those four transactions and I

18   can do that later today in writing.

19          THE COURT:  Oh, all right, that's fine,

20   and then one of the reasons why is one of them is

21   Judge Reed's which is probably been reassigned to

22   me.

23          MR. SCHIESS:  It's probably going to be

24   more than that maybe because the conspiracy

25   involved numerous properties and so if I can --

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  Well, then let's just say

2    restitution will be jointly and severally with

3    the related case numbers.

4          MR. SCHIESS:  But with those related to

5    these fraudulent transactions of these properties

6    and I will identify those as close as I can

7    today.

8          THE COURT:  All right.

9               Due to the defendant's financial

10   situation the fine is being waived.  Supervised

11   release will be imposed for a term of five years.

12   While on supervised release, the defendant shall

13   comply with the standard conditions of

14   supervision recommended by the Sentencing

15   Commission and the following mandatory conditions

16   required by statute:  First, you shall not commit

17   another federal, state, or local crime during the

18   term of supervision.

19               Second, you shall not possess

20   illegal controlled substances.  Understand,

21   please, revocation of supervision is mandatory

22   for possession of illegal controlled substances.

23   And, third, you shall refrain from any unlawful

24   use of a controlled substance and shall submit to

25   one drug test within fifteen days of the

PDF created with pdfFactory trial version www.pdffactory.com

1   commencement of supervision to be followed by at

2   least two periodic drug tests thereafter not to

3   exceed 104 drug tests annually and, once again,

4   revocation is mandatory for refusal to comply.

5   Number four, you shall submit to DNA collection

6   and analysis as directed by the probation

7   officer.

8             In addition, the following

9   special conditions are imposed:  Number one,

10  possession of weapons, you shall not possess,

11  have under your control, or have access to, any

12  firearm, explosive device, or other dangerous

13  weapon as defined by federal, state, or local

14  law.

15            Number two, warrantless search,

16  you shall submit to the search of your person,

17  property, residence, place of business, and

18  automobile under your control, to a search

19  conducted by the United States Probation Officer,

20  at a reasonable time and in a reasonable manner

21  based upon reasonable suspicion of contraband or

22  evidence of a violation of a condition of

23  supervision.  Failure to submit to a search may

24  be grounds for a revocation of supervision, and

25  the defendant shall inform any other occupant

PDF created with pdfFactory trial version www.pdffactory.com

1    that the premises are subject to a search

2    pursuant to this condition.

3                    Number three, debt obligations,

4    you shall be prohibited from incurring new credit

5    charges, opening additional lines of credit, or

6    negotiating or consummating any financial

7    contracts without the approval of the probation

8    officer.  Number four, access to financial

9    information, you shall provide the probation

10   officer access to any requested financial

11   information, including personal income tax

12   returns, authorization for release of credit

13   information, and any other business financial

14   information in which you have a control or

15   interest.

16                    Number five, financial

17   polygraph/truth verification testing, you shall

18   submit to polygraph/truth verification testing as

19   directed by the probation officer to ensure

20   compliance with your financial condition.  Number

21   six, employment restriction, you shall be

22   restricted from engaging in employment,

23   consulting, or any association with any mortgage,

24   real estate or financial lending or investment

25   business during the term of supervision.

PDF created with pdfFactory trial version www.pdffactory.com

1            Number seven, home confinement with

2    location monitoring, you shall be confined to

3    home confinement with electronic monitoring, if

4    available, for a period of five months and you

5    shall pay a hundred percent of the costs of

6    electronic monitoring service.

7                     Do you understand all of that,

8    sir?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you have a written copy

11   of those conditions?

12             PROBATION OFFICER:  I do, your Honor.

13             THE COURT:  All right, Mr. Enloe, in

14   your plea agreement, you've waived your rights to

15   appeal your conviction and sentence,

16   nevertheless, there may be certain appellate

17   right that cannot be waived.  If you do desire to

18   appeal your conviction and sentence, you must

19   file a notice of appeal with this court within

20   fourteen days from today's date.

21                     In the event you cannot afford

22   to pay the costs on appeal, you may request

23   permission to proceed in forma pauperis.  If you

24   require the services of an attorney to assist you

25   on the appeal and cannot afford to pay an

PDF created with pdfFactory trial version www.pdffactory.com

```
1    attorney, one will be appointed to represent you
2    at no cost to yourself but at government expense.
3                    And if you require any
4    transcripts of any proceedings in order to
5    prosecute your appeal and cannot afford to pay
6    for those transcripts, they also will be provided
7    at government expense, do you understand all of
8    that?
9              THE DEFENDANT:  Yes.
10             THE COURT:  Yes?
11             THE DEFENDANT:  Yes, sir.
12             THE COURT:  All right, any objection,
13   Mr. Draskovich, if I sign the order of
14   forfeiture?
15             MR. DRASKOVICH:  No.
16             THE COURT:  What's today, the 17th?
17             THE CLERK:  The 18th, your Honor.
18             THE COURT:  Oh, 18th, I'm a day behind.
19   (Signing.)
20             MR. SCHIESS:  And, your Honor, will
21   that order be attached to the judgment?
22             THE COURT:  Yes, sir, it will be.
23             MR. SCHIESS:  Thank you.
24             THE COURT:  The order of forfeiture
25   will be attached to the judgment, and then we'll
```

PDF created with pdfFactory trial version www.pdffactory.com

1  do an amended judgment with the restitution.

2          MR. SCHIESS:  In thinking about that,

3  when we do the order, the amended judgment, it's

4  probably appropriate at that time for me to give

5  you the related case numbers because then I'll

6  know who many of the related people are and I

7  will know whether I can prove it up on all four

8  of them and it will be simpler to do it then.

9          THE COURT:  All right, and we'll do

10  that then in thirty days.

11          MR. SCHIESS:  Sixty days.

12          MR. DRASKOVICH:  Can I have the Court's

13  indulgence for a moment?

14          THE COURT:  Take a moment.  Sure, take

15  a moment.

16      (Attorney-client conference held.)

17          MR. DRASKOVICH:  Your Honor, as to the

18  condition that he not be allowed to work in any

19  financial endeavors, would the Court considering

20  amending that to only with the approval of

21  probation because that's his area of work and

22  outside of these four issues or these four

23  transactions that Mr. Schiess had previously

24  addressed, this is where he's continued to work

25  and there's been no problem.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  Then we will do that only
2  with the approval of the probation officer.
3          MR. DRASKOVICH:  Thank you.
4          THE COURT:  Number six, only with the
5  approval of the probation officer.
6                  All right, you got that, Mr.
7  Franzen?
8          PROBATION OFFICER:  I do, your Honor.
9  Would you like me to add that into the
10 presentence report, the Court ordered revision?
11         THE COURT:  Yes, sir, if you would,
12 just so that's complete as well.
13         PROBATION OFFICER:  Okay.
14         THE COURT:  All right, anything else
15 then?
16         MR. DRASKOVICH:  As far as the
17 self-surrender date, I would ask that the Court
18 set the self-surrender date in July.  His kids
19 are in school through June and it will be far
20 easier because his respective family members are
21 going to try to get the kids to their schools and
22 it will be less destructive in their lives.
23         THE COURT:  I mean July 1st or after
24 the Fourth of July weekend, when is the Fourth of
25 July this year?

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              MR. DRASKOVICH:  On a Thursday, your
 2   Honor.
 3              THE COURT:  So let's do it the
 4   following Monday, how's that?
 5              MR. DRASKOVICH:  Thank you very much.
 6              THE COURT:  What would that be?
 7              THE CLERK:  Monday, July 8th --
 8              THE COURT:  Monday, July 8th.
 9              THE CLERK:  -- 2013, before noon.
10              MR. DRASKOVICH:  And that will be here
11   at this marshal's office or will it be --
12              THE COURT:  I'm not sure what the
13   Bureau of Prisons will designate.  I was going to
14   say, Mr. Enloe, the Bureau of Prisons will
15   designate your facility probably about a month,
16   or two weeks to a month, before that date and you
17   have to show up there before noon on July 8th, do
18   you understand?
19              THE DEFENDANT:  Yes.
20              THE COURT:  If you aren't there at noon
21   straight up, they assume you've absconded and
22   they release the hounds.  So be there, you know,
23   ten minutes early and, otherwise, I just assume
24   it would be here, but I think they will designate
25   someplace, all right?
```

PDF created with pdfFactory trial version www.pdffactory.com

1              MR. DRASKOVICH:  All right, thank you

2     very much.

3              THE COURT:  Thank you.  We will be in

4     recess.

5

6         (Whereupon, the proceedings concluded.)

7

8

9

10

11

12

13

14              I hereby certify that pursuant
    to Section 753, Title 28, United States Code, the
15     foregoing is a true and correct transcript of the
    stenographically reported proceedings held in the
16     above-entitled matter.

17

18    Date:  July 23, 2013          /s/ Joy Garner
                                  JOY GARNER, CCR 275
19                                U.S. Court Reporter

20

21

22

23

24

25

JOY GARNER, CCR 275
LAS VEGAS, NEVADA  (702)384-3188

PDF created with pdfFactory trial version www.pdffactory.com